Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/28/2017 09:13 AM CST

- 239 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

State of Nebraska on behalf of Hunter Wade Slingsby,
a minor child, appellee, v. Jessie M. Slingsby,
now known as Jessie M. Watts, appellant,
and Devin W. Oxford, appellee.

___ N.W.2d ___

Filed October 31, 2017.    No. A-16-1170.

1.  **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2.  **Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

3.  **Modification of Decree: Child Custody: Proof.** In a child custody modification case, first, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

4.  **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently.

5.  **Child Custody.** While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration.

6.  ____. Factors such as the child's age and preference, academic and social benefits, living environment, and general quality of life, go to the welfare of the child, and such evidence can be considered in a change of custody determination.

- 240 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

7. **Child Custody: Appeal and Error.** In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

Nathan T. Bruner, of Bruner Frank, L.L.C., for appellant.

Michael S. Borders, of Borders Law Office, for appellee Devin W. Oxford.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Bishop, Judge.

Jessie M. Slingsby, now known as Jessie M. Watts, appeals from the decision of the district court for Buffalo County modifying custody of Hunter Wade Slingsby. We affirm.

## BACKGROUND

Devin W. Oxford and Jessie are the parents of Hunter, born in November 2000. In September 2002, a stipulation was reached regarding paternity, custody, support, and daycare expenses. Jessie was awarded custody, and Devin received reasonable parenting time. In July 2006, the court modified the 2002 order to provide Devin with specific parenting time of every other weekend, rotating holidays, and 1 month each summer. Although neither the 2002 nor the 2006 orders of the district court appear in our record, the parties agree on the substance of the orders.

In July 2016, Devin filed an amended application asking the court to grant him physical custody of Hunter. Devin alleged that Hunter wanted to reside with him and that Hunter wanted to try going to school in Ansley, Nebraska (where Devin lives), because he was struggling at his current school in Kearney, Nebraska (where Jessie lives).

- 241 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

A hearing on the modification took place on November 1, 2016. Devin testified that he lives in Ansley with his girlfriend of almost 9 years, Danyle Goodman; their son, who was 5 years old at the time of the hearing; and Danyle's son from a previous relationship, who was 9 years old at the time. Devin's home is large enough that each child, including Hunter (who would turn 16 years old later that month), has his own bedroom.

Hunter was a sophomore in high school in Kearney at the time of the hearing, and he participated in wrestling and cross-country. Devin testified that Hunter struggled in high school and had struggled prior to high school as well. Devin agreed that Hunter is "smart," but that he struggles because he does not follow through on his schoolwork or turn in assignments. Jessie had been working with Hunter on his schoolwork, and Devin was supportive of her efforts. On one occasion, Hunter was at a wrestling meet when Devin and Jessie decided Hunter could not participate because he had not completed a class assignment and test. Devin thinks it is important that he and Jessie work together to address Hunter's issues with schoolwork. On cross-examination, Devin acknowledged that at his house there have not yet been any consequences for Hunter for failing to turn in school assignments. Devin attended Hunter's fall 2016 parent-teacher conference, but had not previously participated in conferences. He had communicated with Jessie about going to a previous conference together, but she was not agreeable to attending together.

Devin testified that he talks to Hunter about his grades "[o]nce a week or so." During Devin's parenting time, he helps Hunter complete his homework. Devin wants Hunter to get good grades and would not allow him to "slack off" with his homework if Hunter came to live with him. At Devin's house, "[s]choolwork comes first before anything else"; that rule has already been implemented with the younger children in his household. Devin believes the high school in Ansley could provide Hunter with a good education. Danyle works

- 242 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

for the Ansley public school system and would be present at Hunter's school every day.

Devin also testified about his employment (he owns a fencing company and is self-employed, mostly fencing pastures and building corrals), his finances, and his child support payment history (there had been times when he fell behind, but also times when he paid ahead). He also testified about his hobby of "trapping" animals, which is "just another form of hunting, conservation," an activity he participates in with the children in his household.

Devin asked the court to award him joint legal custody of Hunter with Jessie. Devin claimed that he and Jessie have been able to communicate about Hunter in the past and that Devin was willing to continue communicating with Jessie. A lot of their communication is through text messaging, much of which is through Danyle's cell phone because Devin does not always have cellular service when he is working. According to Devin, Jessie and Danyle have a good relationship and are able to communicate about Hunter.

Devin also asked the court to award him physical custody of Hunter. Hunter brought up the idea of living with Devin 1½ to 2 years earlier, but Jessie was opposed to the idea. Devin said that he loves Hunter and that they want to do more activities like fishing, hunting, and sports together. Hunter gets along well with the younger children in Devin's household, and he also has friends in Ansley. He is interested in the outdoors and "ag-related" activities, and he participates in 4-H in Ansley, showing cattle. He has also expressed an interest in "participat[ing] in FFA," an activity that is not available at his high school in Kearney. Devin thinks it would be in Hunter's best interests to be placed with him because "[i]t's where [Hunter] wants to be right now. He feels like he would get along better in Ansley at the school. He wants to be around me and his brothers more often." Hunter has been struggling at his high school in Kearney for a couple of years, and a change to a new school "[c]an't hurt." "Ansley would

- 243 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

be a good place for him to go." On cross-examination, Devin agreed that Jessie is a fit parent, that she has been primarily responsible for raising Hunter for the entirety of his life, and that her care of him has been appropriate.

Danyle testified that Devin is a "very loving" father and that he "spends time with his kids and does activities that they all enjoy." She said Devin and Hunter "share a lot of the same interests," including fishing, hunting, and agriculture. Danyle further said that she and Hunter have a "great relationship" and that she would "welcome him into [their] home" if Devin was awarded physical custody.

Danyle is a paraeducator for the Ansley public school system. Both of her children attend public schools in Ansley. The rule in Devin and Danyle's home is that schoolwork has to be done before any activities occur. Danyle said that she would help make sure Hunter completes his homework and that if he does not complete it, then he would lose privileges and would not be able to attend activities. She said that although Hunter does not show maturity in completing his schoolwork, he does show maturity in completing his chores and in helping with her children.

Jessie testified she lives in Kearney with her husband of 12 years, Christopher Watts; their three daughters, who were 8, 5, and 3 years old at the time of the hearing; a foster daughter, who was 18 months old at the time of the hearing; and Hunter. Hunter has his own bedroom in Jessie's home. Jessie has been a stay-at-home mother for 8 years, and Christopher is a pharmacist. Jessie and Hunter have a "great relationship" and get to spend a lot of time together. She supports Hunter in his activities and is there for him whenever he needs her. Christopher has a loving relationship with Hunter as well. They spend a lot of time together, do a lot of sporting activities, and Christopher helps Hunter with his homework. Hunter also has a loving relationship with his half sisters. Jessie testified that Hunter is "very easy going and always seems happy and just ready to do anything" and makes friends easily.

- 244 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

According to Jessie, Hunter's struggles to complete school-work started in third grade. He took "ADHD" medication for a time in fifth and sixth grade, but was taken off of the medication because the side effects outweighed the benefits. In the sixth grade, he continued to struggle with completing schoolwork up to the time of the hearing. Jessie tried punishments, but those had no effect on Hunter so they changed to reward incentives. The incentives worked for a while but he "would eventually kind of slack off again," and the pattern of inconsistency continued. Jessie communicated with Hunter's teachers, and they tried using organizational planners, but Hunter did not remain consistent with completing or turning in his assignments. Jessie said that Hunter would lie about his homework and that the lying had gotten worse in the past couple of years. She said that he was capable of doing the work, but that he just did not want to. Jessie did not believe a change of schools would benefit Hunter because "these problems are not going to change." Hunter "does not love school," and if he could get by without it, "he would definitely not be in school."

Jessie first learned of Hunter's desire to live with Devin in February 2016 after Hunter spoke to a school counselor about his wishes, and the counselor then contacted Jessie about the meeting. When asked what she thought Hunter's motivation was for wanting to move to Ansley, Jessie responded, "He thinks it will be easier, and he thinks that he has more friends up there which is not true because he doesn't communicate with them on a regular basis like he does with the ones here. He . . . does want to live with his dad and his brothers." Jessie does not have a problem allowing Hunter to spend more time with Devin in the summers, but does not want him to move to Ansley because "it's important that Hunter knows that he can't get out of something, especially school just because he may not like it." "He needs to deal with the consequences," and Jessie feels like Hunter is "running away from it."

- 245 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

Jessie believes Devin loves Hunter, but thinks there is a lack of communication between Devin and Hunter. Hunter rarely has telephone contact with Devin, sometimes not even once per month. Jessie has concerns that Hunter would not attend church regularly if he lived with Devin. And it is important to Jessie that Hunter stay connected with his church in Kearney. The pastor at Hunter's church in Kearney testified Hunter is a "really well-behaved and good, young man," and "[a]s he has grown up, he's very responsible." The pastor said he would describe Jessie as "one of the best parents I've ever seen."

Jessie said that she and Devin "don't communicate a lot" and that "it is only about Hunter and it's rare." She is willing to work with Devin and is fine with either text messages or telephone calls. Jessie has a "really good" relationship with Danyle and said Danyle has been "wonderful to communicate with and [sic] in regards to Hunter and his interests." When asked if Danyle does well with Hunter, Jessie said, "Yes." For the year or two leading up to the modification hearing, Jessie had been able to communicate with Danyle and/or Devin about Hunter's schooling, changing pick-up or drop-off times, changing weekends for parenting time, and activities. She agreed Devin had been supportive of her in dealing with Hunter and his schoolwork, and she was not aware of any attempts by Devin to undermine or challenge her decisions.

Christopher testified he has known Hunter since he was less than 18 months old, when Christopher began dating Jessie. Christopher said that he loves Hunter and that they have a "great relationship." In addition to providing care for Hunter, Christopher is involved in various activities with Hunter. He has coached Hunter's sports teams, and they play sports together, exercise together, and go fishing. The two of them have hunted a few times, and Hunter has also gone hunting with Christopher's brother. Christopher also helps Hunter with homework. Hunter has some maturity issues with regard to lying and taking accountability for his actions. Christopher

- 246 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

does not agree with Hunter's desire to live with Devin because Hunter had lived with Jessie since birth and has been well cared for. Christopher said Jessie and he are doing everything they can to help Hunter be a "successful young man [and] graduate from high school." He further said that they provide a loving and safe environment and that "[t]here is no reason for [Hunter] to go anywhere else."

The assistant principal at Hunter's high school in Kearney, Hunter's school counselor, and several of Hunter's teachers testified. They all agreed that Hunter is a "good kid," but struggles in school because he will not complete or turn in homework, even though he is capable of doing the work. One teacher testified that Hunter "doesn't appear to have grasped yet how important school is and how important doing well in school is for his future success," so there have been challenges. Jessie and Christopher have tried to ensure that Hunter is accountable with his schoolwork. None of the teachers had contact with Devin until October 2016 parent-teacher conferences.

Hunter testified in camera. The bill of exceptions notes that only Hunter and the judge were in the courtroom for Hunter's testimony. Hunter testified that he currently lived with Jessie most of the time and is with Devin every other weekend and that he would like to "just flip" so that he is at Devin's house most of the time and with Jessie every other weekend. When asked about Devin's house, Hunter replied, "I don't really have like all the nicer things that I have at my mom's house because at my mom's house I have my own bathroom that's connected to my room. And at my dad's house, I don't have that but it's not that big of a deal." Hunter testified he likes being in a smaller town and has more friends in Ansley. He also likes being outdoors more at Devin's house, and he likes to hunt. Hunter is involved in 4-H, showing cattle. Devin has cattle, and Hunter enjoys helping with the cattle. Hunter said that he "always feel[s] like [he's] kind of trapped" at Jessie's house and that he "[doesn't] really get out much."

- 247 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

Hunter acknowledged having trouble in school because he does not always turn in his homework. Jessie and Christopher help him with his homework. When asked what he thought would change if he lived with Devin, Hunter said:

> I think that the school there, it would be a lot better for me because they can — they have a lot smaller classes than [in the high school in] Kearney . . . and so smaller classes I will have more time that I can maybe talk to the teachers about questions I might have. And they also would go through a lot of their materials a lot faster because I was talking to one of my friends just a few weekends ago, and he said he was already past the point like in geometry — they were already past where we were. . . . [T]hey're like a week or two ahead of us. And they also have other classes like they have an ag class which I really would like to do that because I have my own cattle and stuff and that would be really nice to have. And they also have things like FFA and FBLA that I would like to be a part of.

At Devin's house the rule is that the children have to get homework done before doing anything else, so they do homework on Friday night and are free the rest of the weekend to do what they want to do. Devin and Danyle help Hunter with homework if needed.

In its amended order filed on November 30, 2016, the district court found both parents to be fit and proper persons to be awarded the custody and care of the child. The court found that "the stated preference of Hunter and his evolving relationship with his father is a material change in circumstances." The court found that Hunter was of "sufficient age of comprehension" and that his preferences were based on sound reasons. The court said:

> While legally a "minor child" Hunter is now a 16-year-old young man. Hunter very clearly gave his reasons for wanting to live with his father. Hunter has great interests in agriculture and a rural lifestyle. He has friends in the

- 248 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

Ansley area and has discussed their perceptions of the Ansley School with them. Hunter believes that he would do better in the Ansley School. Hunter makes a strong case and the Court finds that the father's application should be granted. The Court realizes that this decision is a disappointment to Hunter's mother and step-father, but trusts that all parties will cooperate and Hunter will continue to become a fine adult.

The court further found that Hunter's stated preference "outweighs the other factors, most of which would favor him continuing to reside with his mother." Among the "other factors" considered by the court was "the attitude and stability of each parent's character." The court noted that Devin is generally supportive of Hunter's education, but has only recently begun attending parent-teacher conferences; the court was also "somewhat concerned" with the planning of activities by Devin "such as a cruise that would take Hunter out of school when [he] was having problems at school." With regard to the "parental capacity to provide physical care and satisfy education needs of the child," the court noted Jessie has provided "excellent care and has carried the bulk of that burden since Hunter's birth." Jessie's and Christopher's efforts at working to ensure Hunter's success in school was "the factor presenting the Court with the greatest difficulty in deciding this case." With regard to "continuing or disrupting an existing relationship," the court found any disruption of Hunter's relationship with half siblings on Jessie's side "may be offset" by an improved relationship with his half sibling on Devin's side; there would be a similar "offset" with his parental relationships. The court said, "While these are not the only factors considered by the Court they are the primary factors weighed against the expressed desires of Hunter."

The court concluded it was in Hunter's best interests for the parties to be awarded joint legal custody, with primary physical custody awarded to Devin, effective June 1, 2017 (after Hunter completed the 2016-17 school year). The district court

- 249 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

ordered that Jessie would have parenting time "at a minimum, as was allowed for the father" in the 2006 order. The court also ordered Jessie to pay child support of $107 per month, beginning June 1, 2017. Jessie timely appealed.

## ASSIGNMENT OF ERROR

Jessie assigns, restated, that the district court abused its discretion by modifying its prior orders to award joint legal custody, with primary physical custody awarded to Devin. However, Jessie does not address the award of joint legal custody in the argument section of her brief, so it will not be addressed. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Waldron v. Roark*, 298 Neb. 26, ___ N.W.2d ___ (2017).

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

## ANALYSIS

[2-4] Jessie argues that the district court erred by awarding primary physical custody of Hunter to Devin. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.* First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). A material change in circumstances means the occurrence of something which, had

- 250 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

it been known at the time of the initial decree, would have persuaded the court to decree differently. See *Schrag v. Spear, supra*. The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. See *id*.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

[T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

Jessie argues that (1) Devin did not demonstrate a material change in circumstances, (2) Devin is unfit as a custodial parent, and (3) even if a material change of circumstances had occurred and Devin is a fit parent, it is not in Hunter's best interests to be primarily placed with Devin.

- 251 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

We initially note that the district court found "both parents are fit and have positive qualities to offer Hunter." Jessie contends, however, that Devin is unfit in that Devin cannot financially support himself and relies on his live-in girlfriend to pay bills; Devin did not prioritize his child support obligation over other expenses like hunting and fishing licenses or an extracurricular trip for Hunter; Devin allegedly lied on his hunting and fishing license applications when he represented he was current on his child support obligation; Devin allegedly committed tax fraud when he did not get federally mandated health insurance or pay the alternative penalty; and Devin has "questionable" morality, brief for appellant at 21, based on the fact that after trapping animals, he has "dispatch[ed]" them in front of the young children in his household. Devin's response is that none of Jessie's assertions prove he is an unfit parent, because his financial status is not relevant; although there have been times that he has been behind on his child support obligation, there have been times he has paid ahead; and trapping is a "humane" practice and "rural children begin hunting and fishing at a young age," brief for appellee at 8. Having reviewed the record, we determine the district court did not abuse its discretion in finding Devin to be a fit parent.

We now address the material change in circumstances and the best interests of the child. Like the district court, we find this case is similar to *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016), with regard to both. In *Floerchinger*, this court affirmed a district court's modification of physical custody based upon a material change in circumstances stemming from a son's expressed desire to live with his father in Nebraska. The son had been living with his mother in Maine for almost 11 years; at the time of trial, he was 13 years old. In that case, the son testified that he preferred living in Nebraska due to the comfortable and relaxed environment at his father's house and because he enjoyed the interaction he had with his father. In Maine, among other things, the son

- 252 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

stated he was "pestered" by his stepsiblings. *Id.* at 127, 883 N.W.2d at 426.

[5] We noted the Nebraska Supreme Court has stated that "while the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration." *Id.* at 140-41, 883 N.W.2d at 434 (citing *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002)). Further, "in cases where the minor child's preference was given significant consideration, the child was usually over 10 years of age." *Floerchinger*, 24 Neb. App. at 141, 883 N.W.2d at 434. In *Floerchinger*, the district court found a material change in circumstances had occurred subsequent to the decree which justified modification of custody and that such modification was in the best interests of the child. We noted, "The [district] court specifically focused on [the child's] desire to reside with [his father] in Nebraska, concluding that [the child] was articulate and that his decision was based on sound reasoning." *Id*.

Jessie argues *Floerchinger* is inconsistent with *Hossack v. Hossack*, 176 Neb. 368, 373, 126 N.W.2d 166, 169 (1964), which stated that "[s]uch incidents of life as advancing age of minors, remarriage of parents, and particular advantages of one parent's environment do not constitute a legal basis for changing the custody of minor children . . . without an affirmative showing that the welfare of the children demands a change." In *Hossack*, custody was changed by the trial court from the children's mother to their father, and the Supreme Court reversed that decision. The Supreme Court pointed out that the initial divorce decree had found the mother to be an "innocent party [who] was a fit and proper person to have the custody of the two boys until they reach 21 years of age" and that there were no claims made that "the children were neglected or mistreated or that the [mother] was of questionable character or qualifications." *Id*. at 371, 126 N.W.2d at 168. In *Hossack*, evidence that the children were 4 years older

- 253 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

since the time of the initial decree and that the father had since become a professor, remarried, and "could presently furnish them a better-than-average home from an intellectual as well as a physical standpoint," *id.*, was not sufficient to warrant a change in custody, as there was no "affirmative showing that the welfare of the children demands a change," *id.* at 373, 126 N.W.2d at 169. Although the father had taken the children to a psychologist who determined "the children were not intellectually stimulated at home; and that the [mother's] home did not provide motivation for them to use their innate abilities," the court concluded "[t]here was no affirmative showing by the [father] as to how he would accelerate the boys' progress in school or intellectually stimulate them in his home." *Id.* at 372, 126 N.W.2d at 169. Jessie argues that Devin failed to produce evidence that anything would be different in Ansley and that "[a]ccess to 4-H and FFA is simply an advantage of Devin's environment," which *Hossack* says does not constitute a legal basis for changing custody. Brief for appellant at 12.

We first point out that *Hossack* was decided in 1964 under different divorce and parenting laws than exist now and that the appellate standard of review in that case was "for trial de novo," 176 Neb. at 370, 126 N.W.2d at 168, rather than the standard of review applicable today—de novo on the record for an abuse of discretion. In *Hossack*, the Supreme Court observed that the "order modifying the decree included no findings relative to changed circumstances or the best interests of the children." 176 Neb. at 370, 126 N.W.2d at 168. In the record before this court, the district court did make specific findings in that regard, and this court reviews those findings for an abuse of discretion.

[6] Furthermore, we do not read *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016), to be inconsistent with *Hossack v. Hossack*, 176 Neb. 368, 126 N.W.2d 166 (1964). In *Floerchinger*, the court considered a number of factors in its custody determination (e.g., child's age and

- 254 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

preference, academic and social benefits, living environment, and general quality of life). Such factors go to the welfare of the child, and as stated in *Hossack*, such evidence can be considered in a change of custody determination. See, also, *Miles v. Miles*, 231 Neb. 782, 438 N.W.2d 139 (1989) (custody modification based on child's preference and deterioration of parent-child relationship).

Similar to *Floerchinger v. Floerchinger, supra*, the court in this case specifically found Hunter's stated preference to live with Devin and his evolving relationship with Devin constituted a material change in circumstances. Hunter clearly stated his reasons for wanting to live with Devin: He is interested in agriculture and likes to help Devin with cattle, he enjoys being outdoors and hunting, he likes being in a smaller town, and he has more friends in Ansley. Devin felt "trapped" at Jessie's house and did not "get out much." Hunter had also struggled in school for a number of years, particularly with regard to completing and turning in assignments; his grades ran the gamut from A's to F's, despite Jessie's and Christopher's efforts to help him. He had spoken to his friends from Ansley about their school experience and felt the high school in Ansley would be a better fit for him. In particular, Hunter was interested in an "ag class" offered at Ansley, the smaller class sizes (which would provide more opportunity to work with teachers), and the study halls (which would help him to get his homework done during the day). After our de novo review of the record, we conclude the district court did not abuse its discretion in finding there had been a material change in circumstances.

[7] Devin and Jessie presented conflicting testimony regarding whether a change in custody would be in Hunter's best interests, including whether Hunter's reasons for wanting to live with Devin were sound. In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are

- 255 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
STATE ON BEHALF OF SLINGSBY v. SLINGSBY
Cite as 25 Neb. App. 239

often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015); *Floerchinger v. Floerchinger, supra*. The trial court in this case had an opportunity to observe the testimony of both parties, as well as the testimony of Hunter and the other witnesses. The court found Hunter had "very clearly" given his reasons for wanting to live with Devin and that Hunter's stated preference outweighed the other factors for best interests. The court reached this conclusion while also acknowledging the "extraordinary efforts put forth" by Jessie and Christopher and that "their involvement remains essential to Hunter's best interests."

At the time of the modification hearing, Hunter was within weeks of turning 16 years old. As stated above, he clearly stated his reasons for wanting to live with Devin. Although Jessie calls Hunter's reasoning and maturity into question, the district court found Hunter's reasons were sound. Several of Jessie's witnesses testified that, aside from schoolwork, Hunter is mature and responsible and that he has become more mature in the past year. In addition to Hunter's wishes, the district court had an opportunity to consider other best interests factors, including Hunter's academic performance, extracurricular activities, friends, living environment, and general qualities of life at both parents' respective homes. The court found both Devin and Jessie had positive qualities to offer Hunter, but that Hunter's stated preference outweighed the other factors. Upon our de novo review, we can find no abuse of discretion in the district court's decision to award physical custody of Hunter to Devin.

## CONCLUSION

For the reasons stated above, we affirm the district court's decision to award the parties joint legal custody of Hunter, with physical custody awarded to Devin.

Affirmed.