Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/26/2021 08:08 AM CST

**Stacey R. Jaeger, appellant, v.
Duke E. Jaeger, appellee.**

___ N.W.2d ___

Filed December 4, 2020.    No. S-20-122.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court. Although reviewed de novo on the record, the trial court's determination will generally be affirmed absent an abuse of discretion.

2. **Rules of Evidence.** In proceedings where the Nebraska rules of evidence apply, they control the admissibility of evidence, and judicial discretion is allowed only insofar as the rules make it a factor.

3. **Trial: Evidence: Appeal and Error.** Judicial discretion is allowed to determine the relevancy of evidence, and such determination will not be disturbed on appeal unless it constitutes an abuse of discretion.

4. **Motions for New Trial: Appeal and Error.** An appellate court reviews a trial court's ruling on a motion for a new trial or reconsideration for an abuse of discretion.

5. **Judges: Words and Phrases.** An abuse of discretion occurs when a trial court's decision or reasoning is clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

6. **Modification of Decree: Child Custody: Proof.** Custody of a minor child will not ordinarily be modified absent a material change in circumstances, which shows either that the custodial parent is unfit or that the best interests of the child require such action.

7. **____: ____: ____.** It is the burden of the party seeking modification of a child custody order to show two elements: first, that since entry of the most recent custody order, there has been a material change in circumstances that affects the child's best interests, and second, that it would be in the child's best interests to change custody.

8. **Modification of Decree: Child Custody: Words and Phrases.** A material change in circumstances is the occurrence of something that, if it

had been known at the time the most recent custody order was entered, would have persuaded that court to decree differently.

9. **Modification of Decree: Child Custody.** Circumstances having occurred before the most recent custody order are relevant only insofar as they bear on whether the change in circumstances since the most recent custody order are material and substantial.

10. ____: ____. Before custody is modified, it should be apparent that any material change in circumstances alleged will be permanent or continuous, not merely transitory or temporary.

11. **Child Custody.** The wishes of a child are not controlling in determinations of child custody.

12. ____. If a child is of sufficient age and has expressed an intelligent preference regarding child custody, the child's preference is entitled to consideration, alongside other factors.

13. ____. The amount of consideration given to a child's stated preference regarding child custody will depend on the child's age and ability to give reasons for his or her preference.

14. **Child Custody: Appeal and Error.** Where a trial court's order modifying child custody demonstrates that the child's age and reasoning have been duly considered alongside the child's stated preference, an appellate court will generally defer to the trial court's credibility determinations in the assessment of facts.

15. **Child Custody.** Certain factors that must be considered in the determination of a child's best interests in the context of child custody include (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.

16. ____. Certain factors that may be considered in the determination of a child's best interests in the context of child custody include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child.

17. **Trial: Evidence: Appeal and Error.** The admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

18. ____: ____: ____. Erroneous exclusion of evidence does not require reversal if the evidence would have been cumulative and other relevant evidence, properly admitted, supports the trial court's finding.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Amie C. Martinez and Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Jeanelle S. Kleveland, of Kleveland Law Offices, for appellee.

Heavican, C.J., Miller-Lerman, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

A modified divorce decree in 2011 granted Stacey R. Jaeger sole physical custody over her son, C.J., subject to parenting time between C.J. and his father, Duke E. Jaeger. In 2018, Duke petitioned to modify custody.

After hearing C.J. and the parties testify, the district court transferred sole legal and physical custody over C.J. to Duke, subject to Stacey's parenting time. We affirm.

## II. FACTUAL BACKGROUND

Stacey and Duke married in 2004 and lived together in Imperial, Nebraska. They raised two sons: H.J., born in 1997 to Stacey's previous marriage and adopted by Duke, and C.J., born in 2005 to Stacey and Duke. Only custody of C.J. is at issue in this appeal.

Stacey filed for a divorce in 2006. A divorce decree was entered in 2007. Under the divorce decree, Stacey and Duke were granted joint legal custody over their sons, and Stacey was granted sole physical custody, subject to Duke's parenting time.

In January 2008, Stacey filed a petition to modify the divorce decree. She sought sole legal custody over H.J. and C.J., and she requested that any visits between Duke and their sons be supervised. Stacey alleged that Duke had physically abused their sons.

In September 2009, before her petition was adjudicated, Stacey moved with her sons to Waverly, Nebraska. Based on this move, Stacey petitioned for the court to further limit Duke's visits with their sons to once every other weekend and renewed her request that such visits be supervised. Stacey also requested that the parties be ordered to meet in Lexington, Nebraska, which was closer to her new home, to exchange their sons between visits.

Around this time, conflict arose between Duke and H.J., who alleged that Duke had physically abused him. Stacey and Duke agreed that H.J. would no longer spend time with Duke. Since then, H.J. and Duke have remained estranged from each other.

Between 2007 and 2010, Stacey made numerous allegations that Duke was physically abusing C.J. The Nebraska Department of Health and Human Services, the Nebraska State Patrol, and the police department for the city of Imperial all investigated. The district court appointed a guardian ad litem, who "reviewed voluminous material and spoke with investigators with the State Patrol, the Imperial Police Department, DHHS investigators, some of the medical personnel, the counselor for the children, and the children," but concluded that the evidence did not support Stacey's allegations of abuse against Duke. The guardian ad litem also did not recommend that Duke be limited to supervised visits, but did recommend that he complete family counseling.

In March 2011, the district court entered an order modifying the divorce decree. Under the 2011 divorce decree, the parties retained joint legal custody over C.J. and Stacey retained sole physical custody over C.J. Duke was entitled to a minimum of one visit every other weekend with C.J. during the school year and 6 consecutive weeks' visitation during the summer. The district court declined Stacey's request to require that visits between Duke and C.J. be supervised. Weekday visitation was eliminated, and the parties were ordered to exchange

C.J. in Kearney, Nebraska. Duke was ordered to complete family counseling.

Stacey appealed the district court's denial of her request for sole legal custody over C.J. On appeal, in case No. A-11-330, the Nebraska Court of Appeals affirmed the order in an unpublished memorandum opinion filed on March 2, 2012.

On March 1, 2018, Duke filed a petition for modification of the divorce decree in the district court for Chase County. Stacey filed a motion to transfer pursuant to Neb. Rev. Stat. § 25-410 (Reissue 2016), and the case was transferred to the district court for Lancaster County.

The issue before the district court was whether Duke had shown a material change in circumstances that had not been foreseeable when custody was last adjudicated in 2011. Duke alleged that over the past 7 years, C.J. had grown, and that now, as a 14-year-old child, he had expressed a mature desire to live with Duke. The district court heard in camera testimony from C.J. during which time only C.J., the parties' attorneys, and the judge were in the courtroom.

During this testimony, C.J. stated that he loved both of his parents but desired to live with Duke. According to the district court:

> [C.J.] wants to live with his Dad because [they have] the same interests in farming and working on tractors and lawn mowers. They both enjoy hunting and fishing, especially together. [C.J.] would like to have a future in farming and hopes to inherit his Dad's farms in Nebraska and Colorado.

Because this reasoning was sound and C.J. was an eighth grade student who "does well in school," the district court found C.J.'s testimony persuasive.

In contrast, the district court viewed Stacey's testimony at trial more skeptically. The district court found that Stacey "was often not truthful or forthcoming in her testimony" and that she had made coparenting very difficult for Duke.

The district court also considered evidence in the record that Stacey was not meeting C.J.'s needs as his parent. The district court noted that Stacey, a real estate broker, had earned an adjusted gross income of only $21,817 in 2018, while Duke, in retirement, had earned $52,141 in 2018. Further, Stacey's home, which the district court noted is "owned by her parents and [for which she] pays only as much as she can afford for rent," was "cluttered and dirty," according to testimony. In contrast, Duke owned a home and significant farmland.

Additionally, the district court stated that "[i]n the Court's opinion, [Stacey] is extremely overprotective and engage[d] in parental alienation to the extent that it may be harmful to [C.J.'s] general health, welfare, development and social well-being." The district court specifically noted the deterioration of H.J.'s relationship with Duke as evidence that Stacey had already "successfully alienated" one son from Duke. As to H.J.'s allegations that Duke had been physically abusive, the district court concluded, based on its observations at trial, that Stacey "may have coached the children to say that [Duke] had hit them." The district court refused Stacey's testimony about her pre-2011 allegations of abuse against Duke, finding that they were irrelevant to C.J.'s circumstances since 2011.

With these findings of fact, the district court concluded there had been a material change in circumstances since 2011 to justify modification of the divorce decree. That is, had the district court in 2011 "known that [Stacey] would continue to engage in such behavior, [it] may have decided differently" about C.J.'s living situation. Thus, the district court held that it would be in C.J.'s best interests to be moved to Duke's sole legal and physical custody. Stacey was granted parenting time on every other weekend and ordered to pay $305 per month to Duke in child support.

Stacey filed a motion, pursuant to Neb. Rev. Stat. § 25-1144 (Reissue 2016), for a new trial and reconsideration. She alleged that certain irregularities in the proceedings had prevented a fair trial and that the judgment was not sustained by sufficient evidence. On January 23, 2020, the district court

overruled Stacey's motion for a new trial, though it amended the previous order to designate C.J.'s in camera testimony as confidential.

Stacey timely appealed, and we moved the case to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Stacey assigns, consolidated and restated, that the district court erred in (1) modifying the divorce decree to grant Duke sole legal and physical custody over C.J.; (2) excluding, as irrelevant, Stacey's testimony about her past abuse allegations against Duke; and (3) overruling her motion for a new trial or reconsideration.

## IV. STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court.[2] Although reviewed de novo on the record, the trial court's determination will generally be affirmed absent an abuse of discretion.[3]

[2,3] In proceedings where the Nebraska rules of evidence[4] apply, they control the admissibility of evidence, and judicial discretion is allowed only insofar as the rules make it a factor.[5] Judicial discretion is allowed to determine the relevancy of evidence, and such determination will not be disturbed on appeal unless it constitutes an abuse of discretion.[6]

[4] An appellate court reviews a trial court's ruling on a motion for a new trial or reconsideration for an abuse of discretion.[7]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] See *State on behalf of Tina K. v. Adam B., ante* p. 1, 948 N.W.2d 182 (2020).

[3] See *id.*

[4] See Neb. Rev. Stat. § 27-101 et seq. (Cum. Supp. 2016 & Supp. 2019).

[5] See *Tilson v. Tilson, ante* p. 275, 948 N.W.2d 768 (2020).

[6] See *id.*

[7] See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[5] An abuse of discretion occurs when a trial court's decision or reasoning is clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[8]

## V. ANALYSIS

### 1. Modification of Child Custody

The main issue presented on appeal is whether the district court erred in modifying the 2011 divorce decree when it transferred sole legal and physical custody over C.J. to Duke, subject to Stacey's parenting time. Stacey contends that this modification was an abuse of discretion.

[6,7] Custody of a minor child will not ordinarily be modified absent a material change in circumstances, which shows either that the custodial parent is unfit or that the best interests of the child require such action.[9] It is the burden of the party seeking modification to show a material change in circumstances.[10] Specifically, the movant must show two elements: First, that since entry of the most recent custody order, there has been a material change in circumstances that affects the child's best interests, and second, that it would be in the child's best interests to change custody.[11]

Here, because it was Duke who sought to modify the district court's 2011 custody order, he had the burden of proving both elements to justify modification.

### (a) Material Change in Circumstances

[8-10] We have defined a material change in circumstances as the occurrence of something that, if it had been known at the time the most recent custody order was entered,

---

[8] See *Dycus v. Dycus, ante* p. 426, 949 N.W.2d 357 (2020).

[9] See *Tilson, supra* note 5.

[10] See *id.*

[11] See *id.*

would have persuaded that court to decree differently.[12] Circumstances having occurred before the most recent custody order are relevant only insofar as they bear on whether the change in circumstances since the most recent custody order are material and substantial.[13] Before custody is modified, it should be apparent that any material change in circumstances alleged will be permanent or continuous, not merely transitory or temporary.[14]

The district court found that C.J.'s testimony that he preferred to reside primarily with Duke was one factor that weighed in favor of a conclusion that there had been a material change in circumstances. C.J. was approximately 6 years old in 2011, when custody was last modified. But in 2018, during in camera testimony, the district court found that C.J. had persuasively stated his preference and reasoning for being moved to Duke's sole legal and physical custody.

Stacey contends that it was an abuse of discretion for the district court to rely so heavily on C.J.'s stated preference. Stacey warned at oral argument that if a child's stated preference alone could establish a material change in circumstances, then children throughout the state would become capable at any time of asking for and being granted a change in custody. According to Stacey, under a recent Court of Appeals opinion, *State on behalf of Slingsby v. Slingsby*,[15] a child's stated preference can constitute a material change in circumstances only if it is coupled with evidence about an evolving relationship between the child and parent.

We agree with Stacey that the Court of Appeals' reasoning in *Slingsby* is instructive here, but we disagree that it supports her position. In *Slingsby*, a father petitioned to modify

---

[12] See *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020).

[13] See *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009).

[14] See *Jones, supra* note 12.

[15] *State on behalf of Slingsby v. Slingsby*, 25 Neb. App. 239, 903 N.W.2d 491 (2017).

a divorce decree in an effort to gain primary physical custody over his 15-year-old son. After the district court heard the son testify that he preferred to live with his father because of their shared interests in hunting, raising livestock, and being outdoors, the district court granted the father's motion to modify custody. The Court of Appeals affirmed, reasoning that it was not an abuse of discretion for the district court to conclude that "[the son's] stated preference to live with [his father] and his evolving relationship with [the father] constituted a material change in circumstances."[16]

Among the factors in *Slingsby* that indicated an evolving relationship between the parent and child were that the son (1) was 10 years older than the last time a divorce decree was entered; (2) had developed interests in working outdoors and hunting, interests that he shared with his father; (3) felt "trapped" living at his mother's house because he could not get outdoors much or practice his new interests; and (4) was struggling in school under his mother's tutelage, but believed his grades would improve at the school near his father's house because it offered an "'ag class,'" smaller class sizes, and study halls.[17] The Court of Appeals found that individually, these factors each provided evidence of a material change in circumstances, and collectively, they also helped to explain the son's stated preference, entitling it to greater consideration.[18]

The Court of Appeals' reasoning, as set forth in *Slingsby*, models how courts should consider children's stated preferences in custody disputes. We have never held, nor do we read *Slingsby* to hold, that a child's stated preference, alone, will suffice to establish a material change in circumstances. Stacey's fear that children could at any time be granted a change in custody simply by asking is unwarranted.

---

[16] *Id.* at 254, 903 N.W.2d at 501.

[17] See *id.*

[18] See *Slingsby, supra* note 15.

[11] To the contrary, we have specifically held that "the wishes of a child are not controlling" in determinations of child custody.[19] Trial courts should consider a variety of factors that bear on the best interests of the child.[20] Due consideration of these factors will determine whether finding a material change in circumstances is justified.[21]

[12-14] But "if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration," alongside other factors.[22] The amount of consideration will depend on the child's age and ability to give reasons for his or her preference.[23] For example, in cases where we have given the child's stated preference significant consideration, the child was typically over 10 years old.[24] And, as *Slingsby* demonstrates, more consideration will be afforded where additional factors that bear on the child's best interests undergird the child's stated preference and reasoning.[25] Where a trial court's order demonstrates that the child's age and reasoning have been duly considered alongside the child's stated preference, we will generally defer to the trial court's credibility determinations in our assessment of facts.[26]

Here, we find no basis for Stacey's assertion that the district court gave undue consideration to C.J.'s stated preference. After hearing C.J. testify in camera and respond to questions about his stated preference, the district court made

---

[19] *Leners v. Leners*, 302 Neb. 904, 912, 925 N.W.2d 704, 711 (2019), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[20] See *Jones, supra* note 12.

[21] See *id.*

[22] *Leners, supra* note 19, 302 Neb. at 912, 925 N.W.2d at 711.

[23] See *id.*

[24] *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

[25] See *Slingsby, supra* note 15.

[26] See *Tilson, supra* note 5.

specific findings about how much consideration to give C.J.'s stated preference. According to the district court, C.J. was a mature 14-year-old child who demonstrated a capacity for critical reasoning.

Additionally, many of the same factors that indicated an evolving relationship and supported the son's reasoning in *Slingsby* were also present here. The district court specifically noted that since 2011, C.J. had grown 7 years older and become significantly more mature; he had developed interests in hunting, fishing, and working outdoors on tractors and lawnmowers, all interests that he now shared with Duke but not with Stacey; he had spent time at Duke's farm and realized a healthy father-son relationship with him; he had earned money for various jobs that he had performed on visits to Duke's farm; he had decided to become a farmer himself in the future and wished to learn to farm from Duke, who was retired and had time to teach C.J. about farming; and he had begun to show independence by helping to manage Duke's farmland.

Further, the district court found that Stacey's behavior had worsened over the past 7 years, raising questions about her ability to meet C.J.'s needs and to effectively coparent with Duke. Given all of these factors, the district court found that if the court in 2011 had "known that [Stacey] would continue to engage in such behavior, [it] may have decided differently" about C.J.'s living situation.

Thus, contrary to Stacey's assertion, there were many factors that the district court considered and found demonstrated a material change in circumstances in addition to C.J.'s stated preference. We do not find that the district court abused its discretion in its consideration of these factors and its determination that there had been a material change in circumstances that affected C.J.'s best interests.

### (b) Best Interests of Child

Next, we consider the second element in a review of a child custody modification: whether the modified custody

arrangement was in C.J.'s best interests. Stacey argues that even if the district court did not err in finding a material change in circumstances, it abused its discretion in determining that a move of C.J.'s sole legal and physical custody to Duke was in C.J.'s best interests.

[15] Consideration of the child's best interests involves a combination of both mandatory and permissive factors. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) requires that certain factors must be considered, including (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. [27]

[16] Other relevant considerations that may also be considered include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child.[28] No one factor is dispositive, and various factors may weigh more or less heavily, depending on the case.[29]

In support of her argument that the district court abused its discretion in finding that C.J.'s interests would be best served by the modified decree, Stacey again cites to *Slingsby.*[30] To distinguish this case, Stacey contends that the district court's "lack of analysis and reasoning in this case pales in comparison to the trial court's thorough analysis in *Slingsby*."[31] We disagree.

---

[27] *Jones, supra* note 12.

[28] See *id.*

[29] See *id.*

[30] See *Slingsby, supra* note 15.

[31] Brief for appellant at 16.

Contrary to Stacey's assertions, the district court thoroughly analyzed how a change in custody would be in C.J.'s best interests. The district court gave particular weight to the shared interests between C.J. and Duke in farming. It found that C.J. wished to become a farmer and determined that Duke, who was retired but owned farmland, could teach C.J. to farm if they lived together. Based on Duke's testimony, the district court deemed him "an honest and sincere man who wants the best for [C.J.] and is a good role model for his son."

The district court also found that Duke and C.J. had worked well together and enjoyed each other's company during Duke's parenting time over the years. Thus, the district court found that C.J.'s stated preference to live with Duke made sense and provided strong evidence that a change in custody would be in C.J.'s best interests.

Moreover, the district court found that living with Duke would be in C.J.'s best interests because Stacey had demonstrated that she was "extremely overprotective" and tended to alienate her sons from Duke in a way that was damaging to C.J.'s "general health, welfare, development and social wellbeing." According to the district court:

> In comparing [Stacey's and Duke's] character, their attitude and stability, their capacity to provide the physical care and satisfy the educational needs of [C.J.], and considering the general health, welfare, development and social behavior of [C.J.], the Court finds that it would be in [C.J.'s] best interest for him to reside with [Duke].

Based on the district court's due consideration of these factors, which meet the statutory criteria, we do not find that it was an abuse of discretion for the district court to find that a modification of custody was in C.J.'s best interests.

We hold that Duke met his burden for a modification of the 2011 divorce decree. Thus, the district court did not abuse its discretion in modifying the divorce decree in 2018 to move C.J.'s sole legal and physical custody to Duke. Stacey's first assignment of error is without merit.

## 2. Exclusion of Testimony

Stacey assigns, second, that the district court failed to consider relevant evidence that Duke had physically abused both H.J. and C.J. in the past.

During direct examination at trial, Stacey's counsel asked Stacey whether she had made any allegations in the past against Duke regarding physical abuse. Duke objected before Stacey could answer, and the district court sustained Duke's objection. According to the district court, Stacey's answer to the question was irrelevant to the present case because it would pertain only to allegations of physical abuse made prior to 2011, and hence before the most recent decree was entered. Stacey contends that it was reversible error for the district court to sustain Duke's objection and exclude her testimony as irrelevant.

[17,18] The admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[32] Erroneous exclusion of evidence does not require reversal if the evidence would have been cumulative and other relevant evidence, properly admitted, supports the trial court's finding.[33]

As analyzed above, the district court found ample evidence that the modified order would be in the best interests of C.J. Even if the district court had considered Stacey's testimony about her pre-2011 abuse allegations against Duke, such evidence would not have undermined the evidence in the record. When the Court of Appeals in 2012 reviewed Stacey's challenge to the 2011 divorce decree in case No. A-11-330, it observed in an unpublished memorandum opinion that "[t]he record is replete with evidence regarding Stacey's concerns about the children while in Duke's care. However, the instances of alleged abuse have all been unfounded."

---

[32] *AVG Partners I v. Genesis Health Clubs, ante* p. 47, 948 N.W.2d 212 (2020).

[33] See *id.*

The record before the district court contained ample evidence of these pre-2011 allegations. The earlier Court of Appeals opinion was in the record and cited by the district court. Stacey does not assert that any of her testimony would have raised allegations not already expressed in the record.

Thus, even if it was error for the district court to exclude Stacey's testimony about past abuse allegations, it was not reversible error because Stacey's testimony would have been cumulative. We hold that the district court did not abuse its discretion in excluding Stacey's testimony. Stacey's second assignment of error is without merit.

### 3. Motion for New Trial or Reconsideration

Stacey assigns, third, that the district court abused its discretion in not fully granting her motion for a new trial or reconsideration. The district court granted Stacey's motion in part when it designated as confidential its summaries and quotations from C.J.'s testimony. However, Stacey assigns that this remedy was too little and that an entirely new trial should have been ordered.

Neb. Rev. Stat. § 25-1142 (Reissue 2016) sets forth eight grounds on which a motion for new trial may be sustained.[34] Stacey cites to the first and sixth among these, which require that a new trial be granted if

> (1) [i]rregularity in the proceedings of the court, jury, referee, or prevailing party or any order of the court or referee or abuse of discretion by which the party was prevented from having a fair trial [or] (6) that the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law.[35]

Neither of these bases for a new trial are availing here. As analyzed above, the district court's decision was not contrary

---

[34] See *Cinatl v. Prososki, ante* p. 477, 949 N.W.2d 505 (2020).

[35] § 25-1142.

to law. Instead, it was amply supported by evidence in the record. And aside from conclusory statements in her brief, Stacey offers no evidence that she was in fact deprived of a fair trial.

We hold that the district court did not abuse its discretion in denying Stacey's motion for new trial. Stacey's third assignment of error is without merit.

## VI. CONCLUSION

We do not find that it was an abuse of discretion for the district court to move C.J. to Duke's sole legal and physical custody. Nor do we find that the district court abused its discretion in excluding Stacey's testimony about past abuse allegations and overruling Stacey's motion for a new trial. Accordingly, we affirm the decision of the district court.

Affirmed.

Cassel, J., not participating.