IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WAGNER V. WAGNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CARY A. WAGNER, APPELLANT,

V.

JUSTIN D. WAGNER, APPELLEE.

Filed August 27, 2024.    Nos. A-23-607, A-23-713.

Appeals from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed.

Matthew Stuart Higgins, of Higgins Law, for appellant.

James A. Adams, of the Law Offices of James A. Adams, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Cary A. Wagner appeals from the order of the district court for Douglas County modifying the physical custody of the parties' daughter, Kaitlyn, and denying her contempt action against Justin D. Wagner. In a separate appeal, she challenges the district court's order dismissing her second contempt action for lack of jurisdiction. The two appeals have been consolidated for our consideration. Based on the reasons that follow, we affirm both district court orders.

BACKGROUND

Cary and Justin were married in 1997 and divorced in 2010. During the parties' marriage three children were born, two of which have reached the age of majority. The modification of custody and contempt actions only involve Kaitlyn, born in 2006.

The decree of dissolution awarded the parties joint legal custody of the children, and awarded Cary physical custody, subject to Justin's parenting time consisting of alternating

- 1 -

weekends from Friday evening to Sunday evening and every Tuesday evening. Kaitlyn was 2 years old at the time the decree was entered.

In June 2015, an order of modification was entered which expanded Justin's parenting time to alternating weekends from Friday evening to Tuesday evening. Kaitlyn was 9 years old at the time of the June 2015 modification.

In May 2021, Justin filed a complaint for modification, seeking joint physical custody. Justin subsequently filed an amended complaint for modification in January 2022, asking for joint physical custody, "or such other physical custody as may be in the child's best interests." However, it was clear at trial that Justin was seeking sole physical custody of Kaitlyn.

In March 2023, Cary filed an affidavit and application for an order to show cause alleging Justin was in contempt of the court's orders. She alleged in part that Kaitlyn had been staying at Justin's home since June 23, 2022, and she had received no parenting time since then. The court issued an order to show cause why Justin should not be held in contempt for failing to comply with the provisions of the decree and June 2015 modification.

Trial on Justin's amended complaint for modification and Cary's contempt action was held in April 2023. At the time of the trial, Kaitlyn was almost 17 years old, and a junior in high school. She was an honor roll student and was involved in many activities, including show choir, art club, book club, drama club, school musical, and one act play. The activity she was most involved in and that required the most time was 4-H.

Kaitlyn testified that she first became involved in 4-H in the fifth grade, when she was around 10 years old. She became more involved in 4-H when she was in eighth grade. Her primary 4-H activity is showing goats at competitions, which primarily takes place in the summer months. She owns her own goats and Justin keeps them on his 3.5-acre farm where he has lived since 2016.

Kaitlyn also was a 4-H ambassador, which involved mentoring younger children who are just beginning their involvement in 4-H. The mother of two boys Kaitlyn mentored testified that based on her observations, it was clear Kaitlyn loved 4-H and her animals, as well as working with younger kids.

Much of the evidence at trial focused on the conflict that had arisen between Kaitlyn and Cary, much of which was related to Kaitlyn's increased involvement in 4-H. Kaitlyn testified that in the summer of 2021 and 2022, she and Cary had a dispute almost every time there was a 4-H show during Cary's parenting time about the show interfering with family time. Kaitlyn testified that the disputes resulted in the deterioration of her relationship with Cary.

Justin and Kaitlyn shared similar interests and both enjoyed the 4-H activities and taking care of animals. Kaitlyn believed that Cary did not like the 4-H activities because it was something that Kaitlyn and Justin enjoyed doing together. Kaitlyn testified she believed Cary resented the fact that she and Justin had become closer, which added to the conflict between Kaitlyn and her mom. Kaitlyn testified that as she was becoming closer to Justin, her relationship with Cary seemed to be getting worse. She felt like she could not have a good relationship with both parents.

Kaitlyn also testified that the 4-H activities were not important to Cary even though it was something Kaitlyn was heavily involved in and loved to do. She stated that when Cary attended 4-H shows, Kaitlyn got the impression she did not want to be there.

Kaitlyn recalled one incident in early 2022 when goats were born at Justin's acreage that she would later use in the 4-H shows. Kaitlyn wanted to go see the goats the day they were born,

but Cary did not allow Kaitlyn to go. She did not get to see them for about 11 days. Justin recalled the incident and testified that the birth of the goats was a big deal to Kaitlyn and caused friction between Cary and Kaitlyn. Cary testified that she did not recall a time when Kaitlyn wanted to go see newborn goats at Justin's house and she told her she could not go.

Kaitlyn testified that sometime in 2019, toward the end of seventh grade, she started telling Justin she wanted to spend more time with him. She continued to express her desire to have more time with Justin up until the time he filed his complaint for modification in May 2021, as well as after. Kaitlyn testified that sometime in 2020, when she was in eighth grade, she began telling Cary that she wanted more time with Justin. According to Kaitlyn, Cary refused to discuss the topic of Kaitlyn spending more time with Justin.

In June 2022, Kaitlyn began living with Justin exclusively after she and Cary had a disagreement about Kaitlyn's participation in an upcoming 4-H show. Cary told Kaitlyn that she was not going to allow her to participate in the show because she wanted to have "family time." The dispute resulted in Kaitlyn refusing to return to Cary's home at the end of Justin's parenting time.

Kaitlyn testified that leading up to June 2022, she told her dad on multiple occasions that she did not want to go back to her mom's house and wanted to stay with him. Justin told her how important it was to have both parents in her life. She stated that her dad acknowledged her feelings yet still encouraged her to have a relationship with Cary.

Kaitlyn testified that after she stopped going to Cary's house, Justin continued to encourage her to have a relationship with Cary. He encouraged her to have coffee with Cary, text her, and respond to her texts.

Kaitlyn testified that there were other things in addition to 4-H that contributed to the deterioration of her relationship with Cary. She does not feel respected at Cary's home and felt that her two older siblings were more important to Cary than she was. Kaitlyn testified she felt criticized by Cary and her older siblings for wanting to spend more time with Justin. In addition, Kaitlyn and Cary started going to family therapy in January 2023 and Kaitlyn testified Cary was late for a number of these appointments which made her feel like Cary did not respect her and did not want to attend therapy with her.

Kaitlyn testified that her last face to face visit with Cary, other than family therapy, was in December 2022. She stated that even though she had not been having parenting time with Cary, she was still having somewhat regular text communication with her.

Kaitlyn testified that at her dad's house she is responsible for taking care of her animals which includes fixing pens and fences, carrying water buckets, and cleaning pens. The animals require daily care and taking care of them is hard work. Preparing the goats for a 4-H show is also a lot of hard work. Kaitlyn explained that her increased involvement in 4-H and work with the animals is partially because she wants to become a veterinarian after high school. She testified that Cary knows she wants to become a veterinarian but still does not like her involvement in 4-H.

Kaitlyn testified that she feels more comfortable and at ease at Justin's home than at Cary's home. It is easier for her to do her homework and do the things that need to be done to keep up with her school and activities. Kaitlyn feels that she has open communication with Justin and that he knows her well. Kaitlyn also feels that Justin is supportive of her and understands her. She does not feel that way about Cary.

Justin testified that prior to filing his May 2021 complaint for modification, Kaitlyn frequently brought up her desire to spend more time with him. Justin observed that Kaitlyn was frustrated about this issue. Justin encouraged Kaitlyn to talk to Cary about her desire for more time with him. He also testified that Cary's conflict over Kaitlyn's involvement in 4-H was also something that kept coming up. Justin testified that leading up to his May 2021 filing, Cary had been complaining about Kaitlyn's level of involvement in 4-H. Those complaints by Cary continued throughout the pendency of this modification case. Justin testified that Kaitlyn enjoyed 4-H, and he believed it had a positive impact on her and was good for her.

Justin also testified that prior to filing his May 2021 complaint for modification, he communicated with Cary about the possibility of Kaitlyn spending more time with him. Cary's response was that it was not in Kaitlyn's best interest and she refused to discuss it further.

Justin testified that although his amended complaint for modification asked the court to award custody based on best interests, he was seeking sole custody. He stated that he filed the amended complaint because the relationship between Kaitlyn and Cary had deteriorated further. When Kaitlyn would have conversations with Cary she seemed "more distraught, more frustrated, more upset, visibly upset." Kaitlyn's involvement in 4-H continued to be a source of contention with Cary.

Justin testified that leading up to Kaitlyn refusing to go back to Cary's house, he had to pressure Kaitlyn to go back to Cary's at the end of his parenting time. He stated that she resisted going back on a regular basis.

Justin testified that he has seen changes in Kaitlyn since she had been living with him. He believes she is more relaxed, comfortable, calmer, and happier.

According to Justin, things appear to have gotten worse between Kaitlyn and Cary since June 2022. Kaitlyn is frustrated when she leaves the family therapy sessions with Cary, and sometimes is crying.

Justin testified that at some point after the parties' divorce, he and Cary's two oldest children, Jackson and Abigail, minors at the time, refused to spend parenting time with him, just as Kaitlyn was now doing with Cary. Justin's relationship with Jackson and Abigail continued to be strained at the time of trial. He testified that when Jackson and Abigail stopped going to parenting time with him, Cary represented to Justin that it was Jackson and Abigail's choice and that Justin should support it.

Sandy Wagner is Justin's wife. Sandy described Kaitlyn as a hard worker, who loves being outside with the goats, dogs, chickens, and cats. She testified that Kaitlyn spends a lot of time with her dad doing the activities she enjoys. Sandy testified that she has seen changes in Kaitlyn since she started living with her and Justin. She is more energetic and smiles more than she used to. Sandy testified Kaitlyn is also less insecure.

Sandy testified that she encouraged Kaitlyn to have a relationship with Cary. And according to Kaitlyn, Sandy does not say negative things about Cary.

Cary testified that she was not sure when Kaitlyn began her involvement in 4-H but that her involvement intensified in the 2 years leading up to trial. She stated that her complaint about Kaitlyn's 4-H activity is that she is not consulted on anything related to it. She also testified that she is treated like an outsider at the 4-H shows but does her best to be there to support Kaitlyn.

Cary testified that Kaitlyn does not come up to her when she sees Cary at a show; she must approach Kaitlyn.

Cary testified that she had discussions with Kaitlyn about spending more time with Justin both before and after Justin filed his complaint for modification in May 2021. She stated that she discussed the possibility of Kaitlyn spending more time with Justin in the summer. Cary testified she knew how important spending more time with Justin was to Kaitlyn. Cary also agreed that Kaitlyn is mature and intelligent when she speaks her mind.

Cary testified that when Kaitlyn did not return to her home in June 2022, she contacted Justin and insisted that Kaitlyn return home. She testified that Justin told her that he would not force Kaitlyn to return to Cary's home and he was honoring Kaitlyn's wishes. Cary testified that it is wrong for Justin to not insist that Kaitlyn go to Cary's house for her custody time. However, Cary admitted that when Abigail was 17 years old, she refused to spend parenting time with Justin. Cary told him that Abigail had her own thoughts and feelings. She also told him that if he could not accept that Abigail wanted to stay with her, that was something he needed to deal with himself.

Cary believed that Justin had wrongfully influenced Kaitlyn's testimony and pressured her to testify against Cary. She felt that Kaitlyn had been "corrupted" by Justin. Cary also testified that she believed Justin's hatred of her impacted his decision to file for modification of custody. She stated the complaint for modification was a "relentless, vengeful filing."

Following trial on the modification and contempt action, but before the court entered its order, Cary filed a second affidavit and application for an order to show cause (second contempt action) on June 26, 2023, alleging that since her previous contempt filing, she had still not received any parenting time. She also alleged that since the conclusion of trial on April 6, Justin had failed to take Kaitlyn to her therapist and had only taken her to two family counseling sessions.

On July 10, 2023, the trial court entered an "Order to Modify Decree and Order Re: Contempt" regarding Justin's amended complaint for modification and Cary's first contempt action. The court found that there had been a material change in circumstances that warranted a modification of custody and that it was in Kaitlyn's best interests to have the custody arrangement modified. The court awarded Justin sole physical custody of Kaitlyn. It also found that each party should pay his or her own attorney fees. Regarding Cary's first contempt action, the court found she failed to prove by clear and convincing evidence that Justin had willfully violated the custody provisions of the decree and denied her affidavit and application to show cause.

On August 8, 2023, Cary filed a notice of appeal from the July 10 "Order to Modify Decree and Order Re: Contempt." On August 11, the trial court entered a "Dismissal of Application for Show Cause," dismissing Cary's second contempt action, finding it no longer had jurisdiction due to Cary's August 8 notice of appeal. Cary timely filed an appeal from that decision. As previously noted, Cary's two appeals have been consolidated for our consideration.

ASSIGNMENTS OF ERROR

Cary assigns the trial court erred in: (1) finding Justin proved the occurrence of a material change in circumstances to warrant a modification in physical custody, (2) finding that Kaitlyn's desire to reside with Justin was based on sound reasoning and the decision was not made in haste, (3) finding that Cary failed to show by clear and convincing evidence that Justin was willfully

- 5 -

violating the decree, (4) finding that each party should pay their own attorney fees, and (5) finding that it did not have jurisdiction to hear a contempt action while the present matter was on appeal.

STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). The award of attorney fees in an action for modification of a marital dissolution decree is reviewed under the same standard. *Id.* But when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

ANALYSIS

*Material Change in Circumstances.*

Cary first assigns the trial court erred in finding a material change in circumstances had occurred since the most recent modification. She argues that the court erred in making this finding because it was based almost exclusively on Kaitlyn's desire to live with Justin. Cary separately assigns the trial court erred in finding that Kaitlyn's desire to reside with Justin was based on sound reasoning and that her decision was not made in haste. Her first and second assignments of error both relate to the court's finding that a material change in circumstances existed and will be addressed together.

Modifying a custody or parenting time order requires two steps of proof. *Mann v. Mann, supra.* First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Mann v. Mann, supra.*

The Nebraska Supreme Court has never held that a child's stated preference, alone, will suffice to establish a material change in circumstances. See *Jaeger v. Jaeger*, 307 Neb. 910, 951

N.W.2d 367 (2020). To the contrary, it has specifically held that the wishes of a child are not controlling in determinations of child custody. *Id.* Trial courts should consider a variety of factors that bear on the best interests of the child. *Id.* Due consideration of these factors will determine whether finding a material change in circumstances is justified. *Id.*

But if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration, alongside other factors. *Id.* The amount of consideration will depend on the child's age and ability to give reasons for his or her preference. *Id.* And more consideration will be afforded where additional factors that bear on the child's best interests undergird the child's stated preference and reasoning. *Id.* Where a trial court's order demonstrates that the child's age and reasoning have been duly considered alongside the child's stated preference, we will generally defer to the trial court's credibility determinations in our assessment of facts. *Id.*

In finding that a material change in circumstances had occurred to warrant a modification of custody in the present case, the trial court stated:

> [T]he Court was able to personally observe [Kaitlyn] testify and finds that her desire to reside with [Justin] is articulate and based on sound reasoning. The evidence established this was not a decision made in haste and that [Kaitlyn] has been contemplating this as her interests in farm animals and other extracurricular activities associated with them have evolved over the last few years. The level of her interest in these areas and their impact on her general well-being and future was not contemplated at the time of the prior Court Orders listed above. . . .

As the trial court stated, it observed Kaitlyn testify and heard her respond to questions about her stated preference and found that her preference to live with Justin was based on sound reasoning and not made in haste. Kaitlyn was only 9 years old when the decree was last modified in June 2015. At the time of trial in the present case, she was a few weeks away from turning 17 years old. During the 8 years since the prior modification, Kaitlyn has grown up and her interests have changed. In the past several years she has become much more involved in 4-H. She spends much of her time showing goats at 4-H events and mentoring younger children who are new to 4-H. Through her 4-H involvement, Kaitlyn has developed a love of animals, particularly goats, and a passion for showing goats at 4-H events. Kaitlyn and Justin share these interests and enjoy the 4-H events together. As a result, their relationship has grown closer.

Since the last modification, Justin moved to a farm where Kaitlyn keeps her goats. When she is at Justin's home, she can care for the goats daily.

Kaitlyn has also indicated she wants to continue working with and caring for animals well after high school by becoming a veterinarian. Kaitlyn's interest in animals was not contemplated at the time of the prior modification.

In addition, as the trial court noted, Kaitlyn's desire to live with Justin was not a decision she made rashly. She and Cary's relationship had been deteriorating for some time, seemingly because of Kaitlyn's involvement with 4-H. The evidence showed that she had been telling both parents she wanted to spend more time with Justin for some time prior to and after Justin filed his complaint for modification.

We conclude the trial court considered factors in addition to Kaitlyn's preference of where to live and did not abuse its discretion in finding a material change in circumstances had occurred that affected Kaitlyn's best interests.

*Best Interests.*

Next, we consider whether the modified custody arrangement was in Kaitlyn's best interests. Cary does not assign that the trial court erred in its best interests finding, but for the sake of completeness, we address it here.

Consideration of the child's best interests involves a combination of both mandatory and permissive factors. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) requires that certain factors must be considered, including (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020).

Other relevant considerations that may also be considered include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child. *Id.* No one factor is dispositive, and various factors may weigh more or less heavily, depending on the case. *Id.*

The trial court found that it was in Kaitlyn's best interests to modify the custody arrangement because "[Kaitlyn] provided articulate and sound reasons based on her interests, future goals, and overall well-being for wanting to reside with [Justin]." The court considered other factors as well, including Kaitlyn's age, her interest in caring for farm animals and taking part in 4-H activities, and her desire to become a veterinarian. It found that the living environment with Justin allows Kaitlyn to "fulfill and expand on these interests while also furthering her overall quality of life." Kaitlyn testified that she feels more comfortable and at ease at Justin's home than at Cary's home. She testified she has open communication with Justin and she feels that he knows her well. Kaitlyn also felt that Justin was supportive of her and understood her. She did not feel the same about Cary.

The court further found that although Cary is a fit parent and has positive qualities to offer Kaitlyn, their relationship has deteriorated as Kaitlyn's interests have changed over the last few years, and Kaitlyn's relationship with Justin has evolved positively.

In determining whether a modification of custody was in Kaitlyn's best interests, the court considered Kaitlyn's wishes, as well as other best interest factors. We determine that the court did not abuse its discretion in finding that it was in Kaitlyn's best interests to modify custody.

Accordingly, we conclude that Justin met his burden for a modification of custody, and the trial court did not abuse its discretion in modifying the decree to award Justin sole physical custody of Kaitlyn.

*Justin's Willful Violation of Decree.*

Cary next assigns that the trial court erred in finding that she failed to show by clear and convincing evidence that Justin was willfully violating the decree. She alleges that Justin has been violating the decree since June 2022 by failing to make Kaitlyn return to her care, thereby denying

her parenting time as ordered. Cary also claims Justin has violated the decree by making fundamental decisions regarding Kaitlyn without her knowledge or consent.

The court found that Justin had not willfully violated the decree because the testimony from Justin, Sandy, and Kaitlyn established that Justin had encouraged Kaitlyn to see Cary and that it was Kaitlyn's decision to not comply with the custody time allotted to Cary.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence. *Id.*

The trial court's dismissal of Cary's contempt action for failure to provide sufficient evidence is supported by the record. Prior to June 2022, Justin and Kaitlyn had multiple discussions about Kaitlyn not wanting to return to Cary's house and wanting to stay at Justin's house. Justin told Kaitlyn how important it was to have both parents in her life. Justin acknowledged Kaitlyn's feelings yet still encouraged Kaitlyn to have a relationship with Cary.

After Kaitlyn stopped going to Cary's house in June 2022, Justin continued to encourage Kaitlyn to have a relationship with Cary. He suggested having coffee with her and encouraged her to text Cary and to respond to Cary's texts. There was no evidence that Justin encouraged Kaitlyn in any way to not go to Cary's house during her custody time. Sandy also testified that she encouraged Kaitlyn to have a relationship with Cary.

Kaitlyn testified that after she and Cary had a dispute about a 4-H show in the summer of 2022, she refused to return to Cary's home at the end of Justin's parenting time. Kaitlyn was already a teenager at that time and made the decision herself. Since then, Kaitlyn has refused to go to Cary's house during her custody time. She testified that prior to her refusal in the summer of 2022, both parents were aware that she wanted to spend more time with Justin. She testified that Cary refused to discuss it.

As the trial court found, Justin continued to encourage Kaitlyn to see Cary after she refused to return to Cary's home and it was Kaitlyn's decision to not comply with the custody time allotted to Cary. We conclude there was no abuse of discretion by the trial court in determining Justin was not in willful contempt for Cary missing her parenting time since June 2022. This assignment of error fails.

*Attorney Fees.*

Cary assigns the trial court erred in finding that each party should pay his or her own attorney fees. She claims that Justin should have been ordered to pay her attorney fees because she has been a "model mother" and has "abid[ed] by the Court's orders to the letter," in contrast to Justin's behavior. Brief for appellant at 33. She also argues that the parties' income disparity suggests that Justin should pay her attorney fees.

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

Attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). Nebraska appellate courts have previously recognized that the trial court has the ability to award fees in modification proceedings. See *id.* However, customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.*

Cary was not the prevailing party in the modification for custody or March 2023 contempt action. She also does not assert that Justin's amended complaint for modification was frivolous. Accordingly, we cannot say that ordering the parties to pay his or her own attorney fees, rather than ordering Justin to pay Cary's fees, was an abuse of discretion. This assignment of error fails.

*Jurisdiction Over Second Contempt Action.*

Cary assigns the trial court erred in finding that it did not have jurisdiction over her second contempt action while the modification of custody and first contempt action was on appeal.

Following trial on the modification and contempt action, Cary filed a second contempt action on June 26, 2023, alleging that since her first contempt filing, she had still not received any parenting time. She also alleged that since the conclusion of trial on April 6, Justin had failed to take Kaitlyn to her therapist and had only taken her to two family counseling sessions.

The trial court subsequently entered its "Order to Modify Decree and Order Re: Contempt" on July 10, 2023. On August 8, Cary filed a notice of appeal from that order. On August 11, the trial court entered a "Dismissal of Application for Show Cause," dismissing Cary's second contempt action, finding it no longer had jurisdiction due to Cary's August 8 notice of appeal. Cary then filed an appeal for the dismissal of her second contempt action.

Cary's August 8, 2023, notice of appeal challenged the court's decision on modification of custody, as well as her first contempt action. Generally, once an appeal has been perfected, the trial court no longer has jurisdiction. *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020). However, under Neb. Rev. Stat. § 42-351(2) (Reissue 2016), a trial court retains jurisdiction in certain matters. See *Yori v. Helms, supra*. Section 42-351(2) provides:

> When final orders relating to proceedings governed by sections 42-347 to 42-381 [domestic relations actions] are on appeal and such appeal is pending, the court that issued such orders shall retain jurisdiction to provide for such orders regarding support, custody, parenting time, visitation, or other access . . . or other appropriate orders in aid of the appeal process. Such orders shall not be construed to prejudice any party on appeal.

There is a limit on a trial court's jurisdiction to modify a decree concerning an issue which is pending appeal. *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016). Section 42-351(2) does not grant a trial court authority to hear and determine anew the very issues then pending on appeal and to enter permanent orders addressing these issues during the appeal process. *Burns v. Burns, supra*.

A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Yori v. Helms, supra*. Neb. Rev. Stat. § 42-364.15(1) (Reissue 2016) explicitly authorizes a court to "enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to

parenting time, visitation, or other access" and to "use contempt powers to enforce its court orders relating to parenting time, visitation, or other access."

Although a court has continuing jurisdiction to provide equitable relief in a contempt proceeding, in the present case, Cary's second contempt action was asserting the very issue that was pending appeal--Justin's willful violation of the decree. In other words, the first contempt action that she had appealed centered on Justin's failure to follow the custody arrangement, and her second contempt action made the same allegations. Accordingly, the trial court was divested of jurisdiction in the second contempt action because the same issue was before this court on appeal. We conclude the trial court did not err in finding that it did not have jurisdiction over the second contempt action.

## CONCLUSION

For the reasons stated above, we affirm the district court's "Order to Modify Decree and Order Re: Contempt" entered July 10, 2023, and its "Dismissal of Application for Show Cause" entered August 11, 2023.

AFFIRMED.