IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KRAMER V. KRAMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ASHLEY E. KRAMER, NOW KNOWN AS ASHLEY E. WICK, APPELLEE,

V.

JUSTIN P. KRAMER, APPELLANT.

Filed November 14, 2023.    No. A-22-800.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Andrea Finegan McChesney, of M | F Law Omaha, for appellant.

Mark J. Krieger and Terri M. Weeks, of Bowman & Krieger, for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Justin P. Kramer appeals from the order of the Lancaster County District Court denying his request to modify custody and finding that it was in the minor child's best interests to remain in the physical custody of Ashley E. Kramer, now known as Ashley E. Wick. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

### BACKGROUND

The parties are the biological parents of William V. Kramer, born in 2012. In October 2019, pursuant to the parties' consent decree, the court entered an order awarding the parties joint legal custody of William, awarding Ashley sole physical custody, and ordering Justin to pay $1,275 in monthly child support.

In April 2021, Justin filed a complaint to modify the decree alleging that there had been a material and substantial change in circumstances necessitating a change in custody and child support; that Ashley's home and employment were no longer conducive to William's best interests; and that the current parenting plan was no longer in William's best interests. Justin's complaint did not request a specific custody arrangement. In her answer, Ashley denied that there had been a material change in circumstances since the entry of the decree and requested that the court dismiss Justin's complaint.

TRIAL

Trial was held over 2 days in July 2022. Testimony was adduced from Justin, Ashley, and Justin's father.

After the parties separated, Ashley moved to Lincoln, Nebraska, and Justin remained in Auburn, Nebraska. As part of the consent decree, the parties agreed that due to Justin's work schedule, it was in William's best interests to live in Lincoln and attend Malcolm Public Schools.

At the time of the trial, Justin had been employed at a nuclear power plant for 8 years. Because Justin's employment required him to live within 45 minutes of the plant, he has resided in Auburn. Justin testified that he works 12 hour rotating shifts, overnights, and overtime. His regular schedule without any overtime is

> a five-week rotation. So, we'll have . . . four day shifts, and then I get six days off. Then four night shifts, four days off. Then three day shifts, one day off. Four days of training, two days off. Three night shifts, four days off. And then that would be back to the start.

Justin testified that due to his work schedule, during the school year he is unable to exercise additional parenting time Monday through Friday and that he exercised his parenting time primarily on the weekends. During the summer months, Justin exercised additional parenting time. Justin testified that he had exercised all the parenting time he was entitled to under the parenting plan and that he occasionally received extra time.

Justin testified that since the entry of the initial dissolution decree, Ashley had a significant change in her employment which required her to be out of state regularly. However, Ashley did not notify Justin or offer him additional parenting time when she was out of town. Despite this, Justin testified that, generally, he and Ashley have cordial and direct communication and that they primarily communicate via text message. Justin stated that if he was able to see William when Ashley was out of town, he would see William before and after work. Justin acknowledged that his wife would primarily take care of William due to his work schedule. Justin stated that he requested to modify custody because William now experiences a lack of stability because he "bounces between four different houses as a result of Ashley's new work schedule." Justin requested that the court award him primary physical custody.

Ashley testified that at the time of the initial dissolution decree, she worked full time at an auto parts store. However, in 2020 she began working as a mechanic for an international race team which allowed her to spend more time with William. Ashley testified that in 2021, she was out of town for work for 81 days. The race schedules are usually released at the end of the current season and according to the 2022 race schedule, Ashley is scheduled to be out of town for 54 days. Twenty of those days would occur during Justin's parenting time and the remaining 34 would occur during

- 2 -

Ashley's parenting time. Ashley testified that when she was gone during her parenting time, she utilized familial support in Lincoln, including Justin's parents and her stepfather. Except for the times when she is out of town for work, Ashley is a full-time stay-at-home mother.

Ashley testified that the initial parenting time arrangement was designed around Justin's complex work schedule and resulted in the primary care of William falling upon Justin's wife. Ashley stated that she feels that William spending time with his grandparents who live in Lincoln should be prioritized over time with Justin's wife. Despite this, Ashley testified she has occasionally allowed Justin to have additional parenting time when she was out of town for work, but that she preferred for William's grandparents to care for William when school was in session so that William did not have travel 90 miles to and from school.

Justin stated that even though Ashley received her work schedule before the next racing season started, she did not inform him of her schedule ahead of time; did not notify him when she would be gone; did not indicate who would care for William when she was out of town; and did not offer to allow him to exercise additional parenting time. Justin stated that he generally learned that Ashley was gone when he would call Ashley to speak with William only to learn that William was with one of his grandparents. Justin testified that he asked Ashley for her schedule, but he did not recall Ashley's response. Justin testified that his wife was able to locate the online racing schedule that informed him of Ashley's schedule and when to request additional parenting time. However, Justin stated that, most of the time, Ashley declined his requests for additional parenting time because William was going to be with a step-grandparent, because she had already made other plans, or because she does not like William being at Justin's home when Justin had to work. Ashley admitted that she did not provide Justin with her work schedule or inform Justin ahead of time when she would be gone because it was during her parenting time.

Justin testified that he believed that Ashley generally did not want William at his house unless Justin was present because Ashley was not fond of his new wife. Justin testified that he met his wife 2 years prior, that she was 21 years old at the time of the trial, that he had moved into her house in Auburn, and that they had one child together and were expecting another.

Justin's father testified that he watched William for a significant period of time over the previous 2 years when Ashley was out of town for work and that Ashley expressed that she did not want Justin to have William when she was out of town during her scheduled parenting time. Justin's father stated that he had allowed Justin's wife to pick up William during that time without notifying Ashley, but that Ashley then began limiting the time that William spent with his paternal grandparents. Justin's father testified that he was hesitant to testify because he was worried that he would not see William as much, especially after Justin filed the complaint to modify.

At the time of trial, William was entering 4th grade, he had attended the same school since kindergarten, he obtained good grades, and he had made friends at school. During the summer, the parties agreed to allow William to participate in baseball and to attend a 1-week zoo camp. Both parties agreed that William is a happy and healthy child. Justin stated that he had a good, strong relationship with William and acknowledged that since Ashley started her new job, William's grades had not declined, that he was not having any behavioral issues, and that he is a great kid.

After hearing the evidence, the district court denied Justin's complaint for modification. The district court specifically found:

> There has been a change in circumstances. Had the Court known at the time of the original Decree that [Ashley] would fail to communicate the plans for [William] when she was away, the original findings and orders could very well have been different. Similarly, while a relationship with both sets of grandparents is laudable, [Justin] should be, in most cases, the first point of contact to have [William] when [Ashley] is out of town. With [Ashley's] current work schedule, finding time with grandparents that does not otherwise disadvantage [Justin] can be accomplished with ease. This failure to communicate and respectfully consider how to allow [Justin] additional parenting time when convenient and available, meets the burden of showing a material change in circumstances as required.

> Having found [Justin] met his first burden, the Court now considers the best interests of the child. It appears that the parties have been cooperating with each other and communicating with each other in a mostly exemplary fashion. But for [Ashley's] racing weekends, communication and cooperation between the parties seem to go pretty smoothly. The parties are not disparaging the other. [William] is doing exceedingly well. [Justin] has invited the Court to make pretty significant changes. However, that invitation must be declined. [Justin] has not shown that such changes would be in the best interests of [William]. The Court has abiding faith that [Ashley] will re-examine the Court's Local Rules, and the prior orders of the Court, with an eye toward respecting [Justin's] interests in having [William] when she is working. To the extent [Ashley] fails to do so, she risks creating the basis upon which a Court might enter a change relative to custody or parenting time in the future.

Justin now timely appeals from the district court's order denying his complaint to modify.

## ASSIGNMENTS OF ERROR

Justin assigns that the district court erred in (1) denying a change in custody despite finding that there had been a material change in circumstances; and (2) failing to modify the parties' custody and parenting time contrary to an interest of judicial efficiency.

## STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record and will be affirmed absent an abuse of discretion. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021).

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

ANALYSIS

MODIFICATION

Justin first assigns that the district court erred in denying his request for custody despite finding that there had been a material change in circumstances. He generally argues that the district court erred in its consideration of the best interests factors and the weight given to those factors.

Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. *Lindblad v. Lindblad, supra*. Modifying a custody or parenting time order requires two steps of proof. *Id.* First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

A material change in circumstances is defined as the occurrence of something that, if it had been known at the time the most recent custody order was entered, would have persuaded that court to decree differently. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020).

Consideration of the child's best interests involves a combination of both mandatory and permissive factors. *Id.* Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) requires that certain factors must be considered, including (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Id.* Other relevant considerations that may also be considered include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child. *Id.* No one factor is dispositive, and various factors may weigh more or less heavily, depending on the case. *Id.*

The district court found that because Ashley did not disclose her plans for William when she was out of town for work, nor make arrangements with Justin in advance of leaving, Ashley violated her duties and responsibilities of "utmost cooperation" in dealing with Justin as required in the initial parenting plan. Accordingly, the district court determined that had the court known at the time of the original decree that Ashley would not communicate with Justin regarding her plans for William when she was away, the original findings and orders might have been different; and therefore, the court found that Justin met his burden to prove a material change in circumstances had occurred. Nevertheless, the district court ultimately determined that joint legal custody with primary physical custody with Ashley was in William's best interests.

Justin argues that in making this finding, the district court erred in failing to properly consider the best interests factors. In denying Justin's request to modify, the court found that Justin did not show that a change in custody would be in William's best interests. In so finding, the district court considered that both parties were fit parents, that William was flourishing and doing exceedingly well, that the parties had been cooperating and communicating well with each other outside of Ashley's communication regarding her work schedule. The court concluded:

The Court has abiding faith that [Ashley] will re-examine the Court's Local Rules, and the prior orders of the Court, with an eye toward respecting [Justin's] interests in having [William] when she is working. To the extent [Ashley] fails to do so, she risks creating the basis upon which a Court might enter a change relative to custody or parenting time in the future.

Based on our de novo review of the record, we agree with the district court's findings. The evidence shows that since the parties' separation, Ashley has been William's primary caregiver. William has been attending the same school since kindergarten and has been doing exceptionally well. William has many friends at school and has participated in extracurricular activities. There was no evidence that Ashley's work schedule negatively impacted William's grades or attendance at school. Justin testified that he did not have concerns related to Ashley's parenting and believed that she was a good mother. The parties agreed that most of their communications regarding William are cordial. Justin testified that he had been able to exercise all of the parenting time he was entitled to under the parenting plan.

Although Justin argues that William does not have stability in Ashley's home due to her new work schedule, the evidence refutes this. Ashley testified that in 2022, she was gone for a total of 54 days out of the year and was a full-time stay-at-home mother during the rest of the year. Justin's argument is that because William is with either his grandparents or step-grandfather during the 54 days that Ashley is gone if it doesn't fall on Justin's parenting time, that William is in an unstable environment. However, there is no evidence to support that William's time spent with his grandparents has negatively impacted William's home or school life. In fact, Justin's father testified that he and William enjoy spending time together and are able to engage in activities such as fishing. Neither party disputed that William has a close relationship with his grandparents and loves being with them. The court admonished that Ashley's failure to communicate her employment schedule and failure to provide Justin with an opportunity for parenting time during her absence could result in a different result in the future. That said, the court determined that Ashley's prior conduct did not warrant a change in custody as of the time of trial. On this record, we find no abuse of discretion in connection with that finding. This assignment of error fails.

JUDICIAL EFFICIENCY

Justin also contends that the district court erred in refusing to modify custody and parenting time contrary to an interest of judicial efficiency. He argues that the court should modify custody without forcing Justin to initiate contempt proceedings or file another petition for modification because William's best interests are supported by the notion of judicial efficiency. More specifically, Justin argues:

> Given the Court's findings and Order it is clear that if the Court does not modify the parenting agreement now, as [it] should be able to pursuant to Neb. Rev. Stat. § 42-364.15, Justin will have to bring yet another action, presumably one of contempt, and there be a finding of Ashley being found in contempt of the current parenting order before a change relative to custody or parenting time [would be ordered]. . . . This would mean more court proceedings Justin, Ashley, and William would be subjected to yet again. Continued court proceeding[s] would certainly not minimize contact between Ashley and

Justin, nor would it minimize conflict between Ashley and Justin. In fact, it is likely that both contact and conflict between Ashley and Justin would increase exponentially. Such contact and conflict could be avoided if the court chose to modify the child custody and parenting time agreement given its finding there had been a change in circumstances.

Brief for appellant at 10-11.

As we stated before, the basis for modification lies in whether a material change in circumstances has occurred which affects the best interests of the child and where the best interests of the child warrant a change in custody. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). The test is rooted in the child's best interests and not one of judicial economy.

Because we have found that the district court did not abuse its discretion in considering the best interests factors, we likewise find that the court did not err in declining to refuse to modify custody in this case in order "to avoid unnecessary future litigation." Brief for appellant at 11.

## CONCLUSION

For the reasons stated above, we affirm the district court's denial of the request for modification of custody, parenting time, and child support.

AFFIRMED.