IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DEMPSEY V. DEMPSEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JACOB DEMPSEY, APPELLANT,

V.

BRANDIE DEMPSEY, NOW KNOWN AS BRANDIE MCKINSTRY, APPELLEE.

Filed September 17, 2024.    No. A-23-902.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Terrance A. Poppe and Anne E. Brown, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellant.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Jacob Dempsey appeals from the order of the district court for Lancaster County modifying the physical custody of the parties' children. Based on the reasons that follow, we affirm.

BACKGROUND

Jacob and Brandie Dempsey, now known as Brandie McKinstry, are the parents of two minor children, Kayson, born in 2014, and Kolton, born in 2017. A decree of dissolution was entered in July 2021 which approved the parties' stipulation regarding all matters. The decree awarded the parties joint legal custody of Kayson and Kolton and awarded Jacob sole physical custody. Brandie was awarded parenting time on alternating weekends.

- 1 -

On July 8, 2022, Brandie filed a complaint for modification alleging that material changes in circumstances had occurred since the entry of the decree and requested she be awarded sole legal and physical custody of the children. She alleged that the material changes in circumstances included:

> (a) [Jacob's] mental health which has declined to the point that he is unfit to parent the parties' minor children;
>
> (b) On or about November 3, 2021, [Jacob] shot himself twice;
>
> (c) [Jacob] was taken to jail on June 26, 2022, and then released June 27, 2022. [Jacob] assaulted [Brandie] on June 26, 2022, by striking her in the right orbital area causing pain, swelling, and bruising. [Jacob] was ultimately arrested and the case is pending against him . . . .
>
> (d) [Jacob] has caused damage to the home where [Brandie] resides and has threatened and harassed [her];
>
> (e) It is no longer in the children's best interest that they reside with [Jacob] and it is in the best interest of the minor children that their custody be awarded to [Brandie].

On July 8, 2022, Brandie filed an ex parte motion seeking temporary custody of the children because Jacob had physically assaulted her. The court entered an ex parte order giving Brandie temporary legal and physical custody. On July 22, the court entered a temporary order, awarding the parties joint legal and physical custody on a week on/week off basis. This temporary order remained in place until the trial on Brandie's complaint for modification.

Trial was held in August 2023. Brandie testified that at the time the decree was entered, she agreed to Jacob having sole physical custody because of the hours she was working. She was working from 2 p.m. to midnight, Monday through Thursday. At the time of trial, she had different employment and was working from 6 a.m. to 2:30 p.m., Monday through Friday, and one weekend per month. Including the job she had at the time the decree was entered, Brandie had 5 different jobs in 3 years.

Jacob had been at the same job for almost 7 years. His hours were 7:30 a.m. to 3:30 p.m., Monday through Friday.

Brandie testified that there had been a material change in circumstances because Jacob's mental health had declined to the point that he was unfit to parent. She testified that one of the reasons she was concerned about Jacob's mental health was because after the decree was entered, he stalked her. She claimed that he waited outside her workplace for her on at least three occasions and followed her on one occasion. He also called her at work insistently.

At some point after the decree was entered, Brandie's apartment was broken into and vandalized. Brandie testified that about a month later, Jacob told her that he had his friends break into her apartment. After the break-in, Brandie moved out of her apartment because she did not feel safe. She moved in with her mom and later moved in with her boyfriend, Andrew S. Jacob denied having any involvement with the break-in and vandalization of Brandie's apartment.

Brandie testified that in the fall of 2021, she moved back in with Jacob because she thought it would be better for the children if she and Jacob tried to work things out. Jacob testified that Brandie told him she was moving back in because she wanted to get away from Andrew because he was drinking a lot. Brandie lived with Jacob for less than a week.

Brandie testified that one night while she was living with Jacob, they went over to a friend's house and then to several bars. She testified that at the last bar Jacob was drunk and got kicked out of the bar. Brandie stated that she decided to call Andrew to come pick them up and when Jacob saw who she was calling he threw her phone in a field and then punched her in the face. Brandie testified that she then ran to Andrew's house.

Jacob gave a different account of what happened that evening. He testified that on the night he and Brandie went to the bars, they went outside because they were arguing. Brandie wanted to get back together, but Jacob did not. Jacob testified that Brandie struck him in the face several times and then threw her phone in a field across the street and told him to go get it. He testified that he went to look for the phone and when he came back, Brandie was gone. He then had his sister pick him up and take him home.

Jacob was charged with domestic assault after the incident, but the charge was later dismissed by the State. Brandie testified that she filed her complaint for modification because of the assault.

Brandie also testified that the day after they went to the bars, she discovered her car had been vandalized. Her car had been parked in Jacob's driveway overnight. She testified that all four tires were slashed and all four sides of the car were vandalized. Brandie claimed Jacob told her he had caused the damage to her car because he was upset that she was going to move out again. He also asked her if she would refrain from reporting the vandalism if he fixed the damage. He bought her new tires and tried to fix the scratches, but they were still visible. Jacob was charged with vandalism after he damaged Brandie's car.

Jacob admitted that he vandalized Brandie's car but testified that it did not happen the same day as the altercation outside the bar. He testified that Brandie's car was in his driveway because she had asked to come over to see the boys. While she was there, he discovered that she was drinking alcohol and he told her to leave. Brandie called Andrew to pick her up and left her car in Jacob's driveway. Jacob testified that he popped two of her tires and scratched her car. On cross-examination he admitted that he scratched the word "bitch" on one side of her car and "whore" on the other. The children were home when he did this but were inside the house asleep.

Jacob testified that the next morning he had the car towed and had the tires repaired. He stated that Brandie told him she would have the charges dropped if he got the tires fixed. He also tried to fix the scratches, but the words were still visible. At the time of trial, the car still had the words scratched into it.

Brandie also testified that in the fall of 2022, her home was subject to a drive-by shooting. She claimed that Jacob told her he had a friend do it. She testified that she was not home when it happened, but claimed there were holes in the siding that looked like bullet holes. She did not call the police and no bullets were ever removed from the siding. Jacob testified he knew nothing about a drive-by shooting at Brandie's house and he denied telling her that he had a friend shoot at her house.

Brandie testified that Jacob did not discuss medical, childcare, education, or religious decisions related to the children with her. She also testified that Jacob can be "difficult" about things related to the children. One example she gave was when Kolton had a doctor's appointment and Jacob did not allow her to attend. Brandie had made an appointment with a specialist at the

recommendation of Kolton's regular doctor. She testified the appointment was during Jacob's parenting time, and Jacob would not allow her to go to the appointment with him.

Jacob denied telling Brandie she could not go to Kolton's appointment with the specialist. He testified that Brandie asked him to take Kolton to his appointment because it was scheduled during Jacob's parenting time and she had to work.

There was also testimony about Brandie's plans for getting the children to school during her parenting time given that her workday starts at 6 a.m. Brandie testified before the school year started, her plan was that she would go to work at her regular time, the children would wake up to an alarm clock, get themselves ready, get their own breakfast, and ride their bikes to school with neighborhood friends. She stated that Andrew would be present at the house, but the children would be responsible for getting themselves ready.

However, on the first day of school, which was the day before the trial started, the children did not get up on their own. She testified that because her original plan did not work, she now planned to leave work and go home, wake the children, make sure they get ready and have breakfast, and take them to school.

Jacob testified that Brandie had told him about her original plan involving the children getting themselves up and ready for school and then riding their bikes to school. He stated that he had concerns about her plan based on Kayson and Kolton's ages, as well as the busy streets that were on their route to school. Jacob also testified Brandie told him Andrew would be at work during the mornings; the children would be home alone. He testified that during his parenting time, he would take the children to daycare before school and daycare would transport them to school.

Jacob also testified about an accident involving a firearm that occurred in November 2021. He testified that he was at home and had his gun out of the safe because he was going shooting the next day. He was talking on the phone while handling the gun when he accidentally dropped the gun and it discharged. The bullet injured his hand and thigh. The children were not in Jacob's custody at the time. Jacob was charged with discharging a firearm, but the charge was later reduced to disturbing the peace.

Following the incident, Jacob's psychiatrist stated that there was no report of or any history to indicate the discharge of the gun was anything other than an unfortunate accident. He further stated there was no indication that Jacob posed a risk to himself or others based upon his mental health diagnosis or treatment.

Jacob explained that he was seeing a psychiatrist because he takes a controlled substance for attention deficit hyperactivity disorder that requires a follow-up every 3 months. Jacob testified that he does not have any mental health issues, and there is nothing that prohibits him from parenting his children.

The trial court entered an order modifying the decree. It found that Brandie established a material change of circumstances warranting a modification of custody and awarded the parties joint physical custody of the children.

## ASSIGNMENTS OF ERROR

Jacob assigns the trial court erred in (1) finding that Brandie met her burden of proof to establish a material change in circumstances and (2) awarding the parties joint legal and physical custody of the children.

STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). The award of attorney fees in an action for modification of a marital dissolution decree is reviewed under the same standard. *Id.* But when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Jacob's two assignments of error both relate to the trial court's finding that Brandie proved the requirements necessary for the court to modify the physical custody arrangement.

Modifying a custody or parenting time order requires two steps of proof. *Mann v. Mann, supra.* First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

*Material Change in Circumstances.*

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Mann v. Mann, supra.*

In finding that a material change in circumstances existed, the trial court primarily focused on the vandalism of Brandie's vehicle. In its order, it stated that Jacob had vandalized her car by "slashing the tires and scratching in derogatory names." It also noted that Jacob had not fixed her car and the children have seen the damage to the car, including the derogatory words directed at Brandie. The trial court also stated at the end of trial, that it did not think it would have granted primary custody to one party who had vandalized the other party's car and written what he did.

Jacob argues there was no evidence as to what effect the vandalism of the car had on the children. He further points out that, despite that one instance, Brandie testified she had no concerns when the children are with Jacob.

Although the trial court focused primarily on the vandalism to Brandie's car in finding a material change in circumstances, there was other evidence in the record to support a material change in circumstances. There was a safety concern in that Jacob had a loaded gun in the home. Even though he kept the gun in a locked safe when he was not using it, he testified he kept it loaded. As a result, he shot himself when he mishandled the gun. There was also evidence that Jacob stalked Brandie for a period of time after the decree. She testified that he waited outside her workplace on several occasions, followed her on one occasion, and called her at work repeatedly. Jacob did not deny this. There was also evidence regarding an altercation between the parties outside a bar. Although the parties gave different accounts of what happened, the altercation was

physical and resulted in a domestic assault charge against Jacob that was eventually dismissed. Finally, Brandie testified that Jacob did not consult her regarding decisions for the children, even though they have always had joint legal custody. Considering the vandalism of Brandie's car, as well as these other circumstances that have happened since the entry of the decree, we conclude the trial court did not abuse its discretion in finding there had been a material change in circumstances.

*Best Interests.*

Next, we consider whether the modified custody arrangement was in Kayson and Kolton's best interests. Consideration of the child's best interests involves a combination of both mandatory and permissive factors. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) requires that certain factors must be considered, including (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020).

Other relevant considerations that may also be considered include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child. *Id.* No one factor is dispositive, and various factors may weigh more or less heavily, depending on the case. *Id.*

The trial court determined it was in the children's best interests for their physical custody to be placed jointly with the parties. In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). See also *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998) (noting when neither parent is unfit, but neither is ideal, particular weight is given to fact that trial court saw and heard witnesses in making necessary findings as to best interests and welfare of children). The trial court in this case had an opportunity to observe the testimony of both parties.

As is commonly seen in contested custody cases, there was conflicting testimony from Jacob and Brandie regarding various incidents that have occurred since the decree was entered that could affect the children's best interests. Each parent sought to highlight parenting flaws in the other parent to bolster his or her own position as the preferred choice to be awarded custody. The trial court found both parties to be fit parents. It was evident that they both love their children, but both parents have flaws. Accordingly, there are best interest factors that favor Brandie and other factors that favor Jacob, but the key factor in determining best interest is what custody arrangement works best for the children. In the year before trial, the parties had been operating under the temporary order which provided for joint physical custody. The children had been doing well under the joint physical custody arrangement. The parties both testified to routines the children had at each parent's house and both agreed that the children had done well in school the last school year. Based on our de novo review of the record, and giving weight to the fact the trial court saw and

heard witnesses, we cannot say the trial court abused its discretion by deciding it was in the children's best interests to award the parties joint physical custody.

## CONCLUSION

We conclude the trial court did not abuse its discretion in modifying the custody arrangement and awarding the parties joint physical custody. The order modifying the decree is affirmed.

AFFIRMED.